**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| CAPANA SWISS ADVISORS, AG, *et al*., <br><br> Plaintiffs, <br><br> v. <br><br> RYMARK INC., *et al*., <br><br> Defendants. | Case No. _____ <br><br> Originating Court: D. Utah <br> Originating Case No.: 2:23-CV-00467 |

**H2E AMERICAS, LLC'S MEMORANDUM OF LAW IN SUPPORT**
**OF PETITION TO QUASH NON-PARTY SUBPOENA**
**OR FOR ENTRY OF PROTECTIVE ORDER**

H2E Americas, LLC ("Movant") is a nonparty to the civil action of which Defendants Rymark, Inc., Nicholas Markosian, and Vicky Small ("Defendants")[1] are a part. In a continued fishing expedition, Defendants have served a second subpoena on Movant at a late stage in the underlying proceedings and have once again given Movant insufficient time to respond or to make a corporate representative available for depositions. *See* Pet. to Quash Non-Party Subpoena or for Prot. Order ("Petition"), at Ex. A. In doing so, Defendants have repeated the facial and substantive errors that doomed their first set of subpoenas—including the ones already quashed by this Court—on Movant and Movant's members. *See* Pet., at Exs. B, C, D.

Just as before, the subpoena places on Movant an undue burden by imposing upon it overbroad requests using a facially invalid subpoena and dragging Movant into Defendants' case for an improper purpose. For these reasons, Movant has petitioned this Court to quash or enter a protective order relieving it of compliance with the subpoenas and has requested that Defendants

---

[1] Defendants Rymark, Inc. and Nicolas Thayne Markosian are also Counterclaimants and Third-Party Plaintiffs in the above-captioned civil action.

be sanctioned for repeated failures to avoid placing an undue burden on Movant. This is Movant's Memorandum in Support of the Petition.

**FACTUAL BACKGROUND**

**A. Relevant background.**

1. The underlying civil action was initiated by complaint on July 18, 2024, in the United States District Court for the District of Utah. [D.I. 1].[2] Defendants' first answer and counterclaim was filed over two years ago, on September 18, 2023. [D.I. 11].

2. Shortly thereafter, on November 7, 2023, the district court issued a scheduling order setting the close of fact discovery for September 30, 2024. [D.I. 25]. On June 21, 2024, that deadline was extended to January 28, 2025. [D.I. 88].

3. On December 18, 2024, with just over a month before the close of fact discovery, Defendants served its first set of third-party discovery requests—a deposition subpoena and a subpoena *duces tecum*—on Movant, a Delaware corporation.

4. On April 1, 2025, this Court quashed the original subpoenas on the bases that (1) the time frame for compliance was unreasonable; (2) Defendants' broad requests amounted to a fishing expedition that imposed an undue burden on Movant; and (3) fact discovery had closed in the underlying case. Pet., at Ex. B ¶¶ 12, 19, 20, 21.

5. Around the same time, the Eastern District of Louisiana and Eastern District of Pennsylvania quashed or disposed of nearly identical subpoenas that were served on Movant's members, John Simkiss and his wife Sarah Simkiss. Pet., at Exs. C, D. The Eastern District of Louisiana quashed the subpoenas on the basis that it was facially invalid for failure to set a place

---

[2] Unless stated otherwise, each docket entry cited herein refers to the docket in the originating action pending in the United States District Court for the District of Utah at case no. 2:23-CV-00467 (D. Utah).

for a deposition, failure to include a witness fee, and improper service. Pet., at Ex. C. The Eastern District of Pennsylvania marked the matter moot given that the discovery deadline in the underlying case had elapsed. Pet., at Ex. D.

**B.      The instant deposition subpoena.**

6.      Movant heard nothing from Defendants concerning the subpoenas quashed by this Court for over six months.

7.      However, on September 19, 2025, the parties to the underlying litigation came to a stipulation concerning an amended scheduling order [D.I. 324], which the Utah district court granted on October 3, 2025 [D.I. 332]. As a result, the close of fact discovery in the Utah case was extended to October 31. [D.I.332].

8.      Still, Movant heard nothing from Defendants until the evening of Friday, October 17, 2025, when Defendants served the instant subpoena on Movant's domicile office seeking a deposition on October 31, 2025—the last day of fact discovery. Defendants' counsel did not contact Movants' counsel or otherwise apprise Movant of Defendants' renewed desire to depose Movant's corporate designee.

9.      Because the subpoena was served on a Friday evening, Movant's corporate agent did not receive notice of the subpoena until the following Monday, October 20, 2025. This gave Movant just nine (9) business days to respond or comply before the deposition date on October 31, 2025.

10.      At the same time, the subpoena served on Movant demands a deposition covering an impossibly broad range of deposition subjects:

1.    The relationship between H2E and John Simkiss, Shaen Bernhardt, or Blackstone entities.

2.    Any dealings H2E has had with Capana Swiss Advisors AG, AmeriMark Automotive AG, AmeriMark Group AG, Philomaxcap AG, Orbital AG, Whitetree Capital, and Rymark, Inc.

3.    H2E's involvement in or knowledge of transactions involving the transfer of AmeriMark shares to Philomaxcap.

4.    Any role H2E, Simkiss, Blackstone or any affiliated entity played in funding, advancing, or coordinating the litigation strategy for Shaen Bernhardt or any AmeriMark/Capana-related entity.

5.    H2E's review of or reliance on due diligence, corporate records, press releases, capitalization tables, or audit summaries related to AmeriMark, Rymark, or Capana.

6.    Subscription forms, merger agreements, share transfer documents, or certifications received or reviewed by H2E regarding Nicholas Markosian, Rymark, or AmeriMark shares.

7.    Funds, securities, or other consideration paid or received by H2E in connection with any AmeriMark-related transaction.

## LEGAL ARGUMENT

**A.  Defendants have not afforded Movant reasonable time to comply.**

11.    First, this Court should quash the subpoena demanding a deposition of Movant pursuant to Federal Rule of Civil Procedure 45(d)(3)(A)(i) because the subpoenas "fail[ ] to allow a reasonable time to comply."

12.    Federal Rule of Civil Procedure 45(d)(3) provides that, "[o]n timely motion, the court for the district where compliance is required must quash or modify a subpoena that," among other deficiencies, "fails to allow a reasonable time to comply." "What is considered a 'reasonable time to comply' is fact dependent, but courts generally 'consider fourteen days from the date of

service presumptively reasonable.'" *Moore v. Walton*, No. CV 14-3873, 2024 WL 4756902 (E.D. Pa. Nov. 12, 2024) (quoting *In re Keebaugh*, No. 19-163, 2019 WL 5802703, at *2 (E.D. Pa. Nov. 6, 2019)).

13.     Here, Defendants' service took place on or about October 17, 2025 (without actual notice until October 20), giving Movant just *ten (10) business days* to investigate and prepare a corporate designee for a deposition. The breadth of the deposition subjects noticed made this time frame unreasonable.

14.     Defendants could have pursued a deposition of Movant at an earlier date—and reached out to Movant's counsel to provide informal notice. Instead, Defendants waited to serve Movant until right before the deadline—potentially a bid to enlarge the discovery calendar yet again.

15.     Movant should not be burdened with Defendant's repeated delay in seeking information from Movant as the fact-discovery period comes to a close. *See Moore*, 2024 WL 4756902 ("After five months of discovery, Moore provides no legitimate justification for waiting until the eleventh hour to drop this subpoena on the City."). The time given to Movant for compliance falls is unreasonable under Rule 45. Accordingly, the subpoenas should be quashed.

**B.  The subpoena is facially invalid.**

16.     Second, this Court should quash the subpoena demanding a deposition of Movant on the basis that the subpoena is invalid on its face. Specifically, the subpoena fails to identify a "place" for compliance as required by Rule 45(a)(1)(A)(iii) and fails to include a witness fee pursuant to Rule 45(b)(1). Defendant apparently learned nothing from prior attempts to subpoena a nonparty in the underlying case. *See* Pet., at Ex. C, at 12 ("[I]n light of the conflicting evidence regarding personal service, the failure to tender the required witness fee, and the failure to specify

a location for the deposition as required by Rule 45(a)(1)(A)(iii), I find the deposition subpoena is facially invalid.").

17.      Federal Rule of Civil Procedure 45(a)(1)(A)(iii) requires that every subpoena must, among other requirements, identify a "place" of compliance. However, Defendants' subpoena fails to list a place and, in its absence, simply includes a Zoom link. *House v. Wayne USA Co.*, No. 19-2674, 2024 WL 4334404, at *2 (E.D.N.Y. Sept. 27, 2024) (quashing subpoenas with videoconferencing link as facially void for failure to list physical place of compliance and citing cases). "Zoom" is a method of meeting—not a place—and Defendants' counsel have made no effort to seek a stipulation or order for a remote deposition, even after the Eastern District of Louisiana quashed one of Defendants' subpoenas for such a defect earlier *this year*. Ex. D, at 12 ("[I]n light of the conflicting evidence regarding personal service, the failure to tender the required witness fee, and the failure to specify a location for the deposition as required by Rule 45(a)(1)(A)(iii), I find the deposition subpoena is facially invalid.").

18.      Federal Rule of Civil Procedure 45(b)(1) requires that, "if the subpoena requires that person's attendance, tendering the fees for 1 day's attendance and the mileage allowed by law." Yet Defendants' subpoena did not include a witness fee for attendance, rendering it facially invalid. *Duffy v. Kent Cnty. Levy Ct.*, 800 F. Supp. 2d 624, 629 (D. Del. 2011) (quashing a subpoena because, among other defects, it "did it include witness fees and mileage as required by Rule 45"). Again, Defendants should have already learned their lesson given that a similar subpoena was quashed in the Eastern District of Louisiana due to such a defect. Ex. D, at 12 ("[I]n light of the conflicting evidence regarding personal service, the failure to tender the required witness fee, and the failure to specify a location for the deposition as required by Rule 45(a)(1)(A)(iii), I find the deposition subpoena is facially invalid.")

### C.  Defendants pose an undue burden on Movant.

19.      Third, this Court should quash the subpoena demanding a deposition of Movant on the basis that it imposes an undue burden on Movant. This is particularly true because Movant is a nonparty to the underlying litigation.

20.      "To determine whether a production subpoena creates an 'undue burden or expense', courts typically assess factors such as the following: 1) relevance of the information sought; 2) the party's need for the production; 3) the breadth of the request; 4) the time period covered by the request; 5) the request's particularity; and 6) the burden imposed. *Miller v. Allstate Fire & Cas. Ins. Co.*, No. CIV. 07-260, 2009 WL 700142, at *2 (W.D. Pa. Mar. 17, 2009) (quoting 45 Moore's Federal Practice § 45.32); *see also* Fed.R.Civ.P. 45, Advisory Committee Note of 1991 ("A nonparty required to produce documents or materials is protected against significant expense resulting from involuntary assistance to the court.").

21.      Here, Movant is a nonparty to the underlying litigation with little if any connection to any party to the underlying litigation. Defendants became interested in Movant after the corporation was mentioned in a deposition without any contextual connection to the legal theories at work in their case.

22.      Meanwhile, the breadth and the lack of time period covered by the deposition notice not only burdens Movant but makes it impossible to determine the relevance of what Defendants are seeking. None of the information sought—broadly described as "relationships," "dealings," or "involvement" between Movant and many other entities over an indefinite period of time—seems reasonably calculated to turn up relevant information. Meanwhile, Movant is saddled with the burden and expense of fielding questions that may or may not have anything to do with the underlying litigation.

23.    Providing a corporate designee to field Defendants' off-the-wall questions for seven hours would place Movant in the perilous position of opening up its private dealings to a hostile party and to potential disclosure to the broader world. If Movant can glean anything from Defendants' deposition notice, it would be the demand that Movant share with Defendants potentially sensitive business communications with no reasonable connection to the underlying case.

**D.  Alternatively, good cause exists to issue a protective order.**

24.    Finally, should this Court deny Movant's request to quash the subpoena, it should issue a protective order pursuant to Rule 26(c).

25.    Under Rule 26(c), this Court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." "[T]he 'good cause' standard in the Rule is a flexible one that requires an individualized balancing of the many interests that may be present in a particular case." *Nationwide Prop. & Cas. Ins. Co. v. Greco*, No. 2:17CV1163, 2018 WL 10228390, at *1 (W.D. Pa. Mar. 7, 2018).

26.    Here, entering a protective order would, for the same reasons cited above, protect Movant from annoyance and undue burden or expense. Further, good cause to issue a protective order limiting any response exists under the Third Circuit's decision in *In re Avandia Marketing, Sales Practices and Products Liability Litigation*, 924 F.3d 662, 671 (3d Cir. 2019).

27.    First, disclosure will violate Movant's privacy interests, as Defendants' subpoenas seek a host of potentially sensitive business communications between Movant—a nonparty to the underlying litigation—and a number of other individuals and entities.

28.    Second, as with their prior subpoenas, Defendants are seeking information for an improper purpose: an apparent fishing expedition to salvage a failing lawsuit and drag other

entities into the litigation as third-party defendants. At this late stage in the proceedings, it is apparent that Defendants are searching for time and a potential settlement, not answers to relevant questions.

29.     Third, the sharing of information will not promote fairness or efficiency. Movant is a nonparty with no rational connection to the underlying litigation, and Defendants are demanding compliance on an accelerated schedule with few limitations on the scope of deposition subject matter.

30.     To Movant's knowledge, the underlying litigation does not involve issues important to the public. The underlying litigation appears to involve a private dispute among shareholders of a single entity, and Defendants seek private business communications from or to Movant, a nonparty to the litigation.

**E.  Defendants must be sanctioned for failing to take reasonable steps to avoid imposing an undue burden or expense on Movant.**

31.     "[T]he language of Rule 45(c)(1) . . . make it clear that sanctions are appropriate if the subpoenaing party fails to take reasonable steps to avoid imposing an undue burden on a third party." *High Tech Med. Instrumentation v. New Image Indus.*, 161 F.R.D. 86, 89 (N.D. Cal. 1995)

32.     Defendants demonstrated little if any regard for the undue burden imposed on Movant. In fact, Defendants' newly issued subpoena commits many of the same errors already committed by Movant with other subpoenas, including the subpoena previously served on Movant. Just as before, Defendants served their subpoena at the eleventh hour, without sufficient time to prepare, and are seeking a broad range of information with little if any connection to the underlying litigation.

33.     Under Rule 45(d)(1), "[t]he court for the district where compliance is required must enforce this duty [to avoid imposing undue burden or expense] and impose an appropriate

sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply." *See, e.g.*, *Spring Pharms., LLC v. Retrophin, Inc.*, No. 18-CV-04553, 2019 WL 3731725, at *7 (E.D. Pa. Aug. 8, 2019) ("We find that Defendant Retrophin, in attempting to depose a non-party on a matter irrelevant to the question of whether Plaintiff Spring has constitutional standing to sue, thereby overstepping the narrow scope of discovery at this early stage in the underlying litigation, did not 'take reasonable steps to avoid imposing an undue burden on a third party.'").

34.     Accordingly, this Court should award to Movant reasonable attorneys' fees and costs expended to defend Movant against Defendants' subpoenas.

## CONCLUSION

WHEREFORE, for the foregoing reasons, this Court should quash the third-party subpoenas issued to Movant by Defendants, or, alternatively, enter a protective order relieving Movant of any obligation to comply. It should also impose sanctions on Defendants in the form of reasonable attorneys' fees.

[*Signature page follows*]

Dated: October 30, 2025

**BERGER MCDERMOTT LLP**

 */s/ David B. Anthony*

David B. Anthony (#5452)
Zachary J. Schnapp (#6914)
1105 N. Market Street, 11th Floor
Wilmington, Delaware 19801
Telephone: (302) 655-1140
Facsimile:  (302) 658-1131
danthony@bergermcdermott.com
zschnapp@bergermcdermott.com

Jonathan Goldstein (*pro hac vice* to be sought)
David R. Osborne (*pro hac vice* to be sought)
**GOLDSTEIN LAW PARTNERS, LLC**
200 School Alley, Suite 5
Green Lane, PA 18054
Telephone: (610) 949-0444
Facsimile: (215) 257-1910
jgoldstein@goldsteinlp.com
dosborne@goldsteinlp.com

*Counsel for Movant H2E*